[Cite as *Karras v. Karras*, 2016-Ohio-8511.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| OURANIA A. KARRAS | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO. 27094 |
| | : | |
| v. | : | T.C. NO. 15CV5456 |
| | : | |
| ANASTASIOS KARRAS | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 30th day of December, 2016.

. . . . . . . . . . .

JAMES PAPAKIRK, Atty. Reg. No. 0063862 and GREGORY E. HULL, Atty. Reg. No. 0023520, 50 E. Business Way, Suite 410, Cincinnati, Ohio 45241
        Attorneys for Plaintiff-Appellee

LAURENCE A. LASKY, Atty. Reg. No. 0002939, One First National Plaza, Suite 830, 130 W. Second Street, Dayton, Ohio 45402
        Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1}   Anastasios ("Tom") Karras appeals from a judgment of the Montgomery

County Court of Common Pleas, which granted judgment on the pleadings in favor of Ourania Karras on her forcible entry and detainer action against Tom and on all of Tom's counterclaims against Ourania.

{¶ 2} For the following reasons, the judgment of the trial court will be affirmed.

## I. Background Information

{¶ 3} The background of this case, which is gleaned from a prior decision of this court, *Karras v. Karras*, 2d Dist. Montgomery No. 26814, 2016-Ohio-8079, is as follows:

{¶ 4} Andreas Karras died in May 2013. He was survived by his wife, Ourania, and three adult children from a previous marriage, Tom, Maria Powers, and Giorgio Karras. Prior to Andreas's death, he, Ourania, and Tom lived together in the marital home, a home in which the children had been raised.

{¶ 5} Andreas's Will poured many of his remaining assets into the Andreas G. Karras Trust, which was created and executed in 1992, at the same time as his Will; other assets had been transferred to the Trust before his death. The Trust was a joint trust with Ourania, and during Andreas's and Ourania's lives, both were authorized to transfer property into and out of the Trust and to amend or revoke the Trust.

{¶ 6} The Trust contained several provisions which were to be triggered in the event Andreas predeceased Ourania. In that circumstance, Ourania would continue to serve as surviving trustee, and Andreas's children would serve as successor co-trustees. The Trust assets would be divided into two separate trusts: Survivor's Trust A and Decedent's Marital Share, Trust B. Ourania's separate Trust property was allocated to Trust A; the remaining Trust property was to be divided between Trust A and Trust B, as provided in the Trust. During Ourania's lifetime, she was entitled to all of the income and

principal from Trust A. From Trust B, she was also entitled to all of the income, to the principal necessary for her maintenance and support, and to annual payments of the greater of $5,000 or 5% of the principal. Ourania was entitled to live in the couple's marital home or to sell it to purchase other accommodations or to pay for nursing home care.

{¶ 7} Upon Ourania's death, after certain specific bequests were made, the assets remaining in Trusts A and B were to be divided into equal shares and distributed "to Andreas' and/or Ourania's children, if living, according to the terms of the Trust." *Karras,* 2d Dist. Montgomery No. 26814, 2016-Ohio-8079, at ¶ 3.

{¶ 8} In December 2005, Andreas and Ourania amended the Andreas G. Karras Trust. The Amendment deleted the provisions creating Trusts A and B, provided for payment to Ourania of $200,000 in "liquid funds" from Andreas's "separate Trust property," free of trust and in lieu of an allocation of Trust assets to Trust A and B, and divided the remainder of Andreas's separate Trust property, in equal shares, to his children.

{¶ 9} Subsequent to the execution of these various estate planning documents, Andreas opened numerous retirement, investment, savings, and checking accounts, many of which were not titled in the name of the Trust. Some were titled jointly with other owners, were designated as payable to a particular beneficiary (other than the Trust) upon the death of the owner(s), or were held jointly with his wife and/or one of the children, with a right of survivorship.

{¶ 10} Andreas's death in 2013 led to substantial litigation between Ourania and the children over the provisions of the Trust, who should serve as trustee(s), and whether

various accounts were Trust assets. Moreover, shortly after his death, the children and Ourania made several sizeable transfers from accounts to which they had access; the ramifications of these transfers were also disputed.

**{¶ 11}** In May 2014, the children filed a complaint for declaratory judgment in the Montgomery County Court of Common Pleas, Probate Division (Case No. 2014 MSC 161), seeking a declaratory judgment that various accounts were Trust assets and that Ourania had improperly converted a certificate of deposit and deposited those funds into her own checking account; they also sought to have Ourania removed as a trustee. Ourania filed several counterclaims as well. Specifically, she sought a declaratory judgment that she could act independently as a trustee, that she could live in the marital residence, and that she owned certain accounts and assets. She also alleged conversion and concealment by the children of property belonging to her, the estate, or the Trust, and she requested an accounting.

**{¶ 12}** The probate court resolved the parties' claims and counterclaims in a judgment filed on July 28, 2015. The probate court's resolution of some of the issues in that case is of limited relevance to the case before us. In pertinent part, the probate court found that "Ourania is entitled to summary judgment on her claim that Tom is not permitted to remain in the residence."

**{¶ 13}** On appeal from the probate court's judgment, the children challenged only the court's ruling that certain assets acquired after the Trust was created were not trust assets. Ourania raised several issues on cross-appeal, some of which we found to have merit, but none of which is relevant to this appeal. We noted that the probate court had determined that 1) the trust "granted Ourania a life estate, and exclusive possession of,

the residence," 2) Ourania (and not the Trust) was required to pay taxes and expenses associated with her living in the house, and 3) "Tom had no right to continue living in the residence," as he had claimed. *Karras* at ¶ 6. However, these parts of the probate court's judgment were not assigned as error or otherwise addressed in the appeal.

## II. History of this Case

{¶ 14} On October 16, 2015, Ourania filed a complaint against Tom in the General Division of the Montgomery County Court of Common Pleas for forcible entry and detainer, rent, and damages. The complaint alleged that Tom had "failed and refused to leave the marital home, and continue[d] to improperly reside" there, thereby interfering with Ourania's enjoyment of the property and her life estate, and it sought to evict him from the property. The complaint further alleged that Ourania had given Tom notices to vacate the premises, but he had failed to comply. Ourania sought at least $1,000 in rent "for every month [Tom] has lived in the marital home without permission," beginning in May 2013, plus interest. The probate court's decision in Case No. 2014 MSC 161 was attached to Ourania's complaint.

{¶ 15} Tom filed an "Answer and Counterclaim," in which he alleged that he had lived in the house most of his life, that his father had "intended for him to reside in the premises forever and ultimately to give him the home," that Ourania had refused to pay expenses associated with the house, as she had been ordered to do in the probate case, and that she therefore did not have "clean hands" in seeking to enforce other aspects of the probate court's decision with respect to the property. Tom further asserted that the probate court "did not interpret the intentions of Andreas Karras correctly," that Tom's "adverse possession claim [was] superior to [Ourania's] life estate claim," and that the

"retaliatory eviction" had damaged Tom in an amount in excess of $25,000. Tom's Answer and Counterclaim did not specifically identify any counterclaims, except to mention "adverse possession," Ourania's "failure" to "make reasonable accommodation" for his unspecified "handicap," and his claim for damages.

{¶ 16} In December 2015, Ourania filed a motion for judgment on the pleadings and a motion to expedite resolution of the forcible entry and detainer. On January 4, 2016, the magistrate granted Ourania's motion for judgment on the pleadings and overruled her motion to expedite as moot; it also resolved other motions which are not relevant to this appeal. Tom filed objections, to which Ourania responded.

{¶ 17} On March 31, 2016, the trial court overruled Tom's objections and adopted the magistrate's decision. Specifically, the trial court found that res judicata applied; Tom and Ourania had been parties to the probate court litigation, and the probate court had fully addressed and determined Tom's claim that he had a legal right to live in the Karrases' marital home. On this basis, the court granted Ourania's motion for judgment on the pleadings. The court also "overruled" Tom's counterclaims, because they were predicated on his legal right to live at the residence. Further, the court concluded that Tom had failed to plead any facts to substantiate his claim of retaliatory eviction, to establish a disability that could be the basis of a fair housing claim, to demonstrate that his possession of the property had ever been exclusive (for adverse possession), and/or to demonstrate that Ourania's behavior warranted application of the doctrine of unclean hands. The court held that the issue of damages would be tried to a jury, as Tom had requested. The trial court's judgment included Civ.R. 54 certification that there was no just cause for delay in appealing the issues it had decided.

**{¶ 18}** Tom raises three assignments of error on appeal.

### III.    Res Judicata

**{¶ 19}** In his first assignment of error, Tom asserts that the trial court erred in concluding that res judicata applied.   Tom contends that the probate court expressly stated that it could not address a forcible entry and detainer claim, because it lacked jurisdiction to do so, and that, because the probate court did not comply with R.C. Chapter 1923, there could be "no valid eviction."

**{¶ 20}**   "Under the doctrine of res judicata, '[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.' "   (Emphasis omitted.) *Kelm v. Kelm,* 92 Ohio St.3d 223, 227, 749 N.E.2d 299 (2001), quoting *Grava v. Parkman Twp.,* 73 Ohio St.3d 379, 653 N.E.2d 226, syllabus (1995).   Furthermore, res judicata bars the litigation of "all claims which were or might have been litigated in a first lawsuit." (Emphasis omitted.)   *Natl. Amusements, Inc. v. Springdale,* 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990).

**{¶ 21}** The issue that was resolved by the probate court – and which was pertinent to the forcible entry and detainer proceedings – was whether Tom had any right to possession of the property in question.   That question was fully and definitively resolved by the probate court (Tom "is not permitted to remain in the residence"), and Tom did not appeal from that portion of the probate court's judgment.   The res judicata effect of that holding is unaffected by the fact that the nature of the proceedings was different, i.e., the probate proceedings were not conducted under the forcible entry and detainer statutes. Specifically, Tom's assertions in his Answer and Counterclaim in this case that his father

intended for him to possess the property, that his eviction was "retaliatory" and violated his rights, that the probate court did not correctly interpret his father's intentions, and that he had a superior claim to the property than Ourania were barred by res judicata; they were or might have been resolved in the prior action. The trial court did not err in reaching this conclusion.

{¶ 22} Significantly, the probate court did not take any steps to remove Tom from the house or otherwise enforce its decision as a forcible entry and detainer action, which it lacked jurisdiction to do. As stated above, however, it did resolve any dispute over who was permitted, authorized or entitled to live in the house. Pursuant to R.C. 1923.02(A)(5), forcible entry and detainer is appropriate when a defendant is an occupier of lands or tenements, without color of title, and the complainant has the right of possession to them. Ouranias's right to exclusive possession was settled in the probate court, and Tom was not entitled to relitigate it.

{¶ 23} The first assignment of error is overruled.

## IV.   Right to Arbitration

{¶ 24} Tom contends that the trial court erred in concluding that he did not have a right to arbitration. He argues that arbitration is encouraged by Ohio courts, that it was provided for in the Trust, and that it should have been permitted in this case.

{¶ 25} Tom did not raise the alleged right to arbitration in his Answer. Rather, he raised it in his replies to some of Ourania's motions and memoranda,[1] when he encouraged the court to review the Trust and asserted that "[t]he Trust requires that any

---

[1] For example, references to seeking arbitration can be found in Tom's Reply to Ourania's motion to expedite resolution of the forcible entry and detainer and in his Memorandum in Reply to Ourania's Memorandum Concerning Defendant's Jury Demand.

dispute by the parties * * * be addressed through arbitration."

{¶ 26} The magistrate found that Tom had waived his right to arbitration "through his active participation in the probate case."  Tom objected to this finding, noting that Ohio courts "encourage alternate resolution of disputes."  However, the trial court also found, specifically, that Tom had been aware of the right to arbitrate "yet had acted inconsistently with that right" by invoking the probate court's jurisdiction and participating extensively in its proceedings (along with his siblings); the court also found that it would prejudice Ourania if arbitration were ordered at the time of the forcible entry and detainer action, due to Tom's prior acts inconsistent with seeking arbitration and his delay in requesting arbitration.

{¶ 27}  Additionally, we note that the Trust agreement does not provide an unconditional right to arbitration, as Tom's argument suggests.   Rather, it states:

Any controversy between the Trustee or Trustees and any other Trustee or Trustees, or between any other parties to this Trust, including Beneficiaries, involving the construction or application of any of the terms, provisions, or conditions of this Trust, shall, on the written request of either or any disagreeing party served on the other or others, be submitted to arbitration.

* * *

Based on our reading of this provision, the Trust agreement does not "require" arbitration of a dispute unless one of the trustees or beneficiaries requests resolution by arbitration, in writing, and serves the other trustees and/or beneficiaries with notice of same.   Tom does not assert that such notice was ever given in this case, which provides additional support for the trial court's conclusion that the right to arbitration could be and was waived

in this case.

{¶ 28} The second assignment of error is overruled.

## V.    Right to Jury Trial

{¶ 29} In his third assignment of error, Tom contends that the trial court erred in finding that he "did not have a right to a jury trial."

{¶ 30} Tom's assertion that he was denied a jury trial is not entirely correct.   The trial court entered judgment on the pleadings in the forcible entry and detainer action, but it found that Tom was entitled to a jury trial on the issue of damages (unpaid rent and interest), notwithstanding his failure to comply with Civ.R. 38(B) in requesting a jury trial.

{¶ 31} In the determination of a Civ.R. 12(C) motion for judgment on the pleadings, the nonmoving party is entitled to have all of the material allegations in the pleadings, and all reasonable inferences to be drawn therefrom, construed in his or her favor as true.   *American Tax Funding L.L.C. v. Miamisburg,* 2d Dist. Montgomery No. 24494, 2011-Ohio-4161, ¶ 31.   A Civ.R. 12(C) motion for judgment on the pleadings presents questions of law, and its resolution is restricted solely to the allegations in the pleadings and any writings attached to the pleadings.   *Greenview Local School Dist. Bd. of Edn. v. Staffco Constr., Inc.*, 2d Dist. Greene No. 2016 CA 11, 2016-Ohio-7321, ¶ 10, citing *Peterson v. Teodosio,* 34 Ohio St.2d 161, 297 N.E.2d 113 (1973).   A motion for judgment on the pleadings can be granted when the court, after construing the pleadings most favorably to the nonmoving party, finds beyond doubt that the nonmoving party could prove no set of facts in support of a claim for relief.   *State ex rel. Midwest Pride IV, Inc. v. Pontious,* 75 Ohio St.3d 565, 570, 664 N.E.2d 931 (1996).

{¶ 32} A motion for judgment on the pleadings presents only questions of law,

and the standard of review is de novo. *Inskeep v. Burton,* 2d Dist. Champaign No. 2007 CA 11, 2008-Ohio-1982, ¶ 7, citing *Dearth v. Stanley,* 2d Dist. Montgomery No. 22180, 2008-Ohio-487. De novo review requires an "independent review of the trial court's decision without any deference to the trial court's determination." *Jackson v. Internatl. Fiber,* 169 Ohio App.3d 395, 2006-Ohio-5799, 863 N.E.2d 189, ¶ 17 (2d Dist.), quoting *State ex rel. AFSCME v. Taft,* 156 Ohio App.3d 37, 2004-Ohio-493, 804 N.E.2d 88, ¶ 27 (3d Dist.).

**{¶ 33}** It is axiomatic that, where the pleadings contain no material facts which could entitle a party to relief, there is no right to have the matter presented to a jury. A different conclusion would render Civ.R. 12(C) (and other rules, such as the summary judgment rule, Civ.R. 56) meaningless. As discussed above, the issue of whether Tom had a right to continue living in the marital home was resolved in the probate court proceedings; the court determined that Ourania was entitled to exclusive possession of the property. Because this issue was settled, the trial court properly concluded that res judicata applied, that judgment on the pleadings was appropriate with respect to that issue, and that Tom's right to a jury trial was limited to the issue of damages.

**{¶ 34}** The third assignment of error is overruled.

## VI. Conclusion

**{¶ 35}** The judgment of the trial court will be affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

James Papakirk
Gregory E. Hull

Laurence A. Lasky
Hon. Dennis J. Langer