NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0099n.06

Nos. 20-3445/3498

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DOUGLAS SULLINGER, | ) | |
| Plaintiff, | ) | **FILED** |
| | ) | Feb 22, 2021 |
| | ) | DEBORAH S. HUNT, Clerk |
| CHRIS ANDREWS; WILLIAM SMITH; VENDITA TECHNOLOGY GROUP, INC., | ) | |
| | ) | |
| Plaintiffs-Appellants (20-3445), | ) | ON APPEAL FROM THE |
| Defendants-Appellees (20-3498), | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE |
| v. | ) | NORTHERN DISTRICT OF |
| | ) | OHIO |
| CAROL SULLINGER; VACS SOLUTIONS, LTD.; JOHN DOE, | ) | |
| | ) | |
| Defendants-Appellees (20-3445), | ) | |
| Defendants-Appellants (20-3498). | ) | |
| | ) | |

BEFORE: ROGERS, DONALD, and BUSH, Circuit Judges.

JOHN K. BUSH, Circuit Judge. Divorce is supposed to be the last word in a marriage, but sometimes ex-spouses continue to fight. Such is the case here, where Vendita Technology Group, Inc. ("VTG Inc."), Chris Andrews, and William Smith appeal the district court's orders granting summary judgment to Carol Sullinger, VACS Solutions, Ltd. ("VACS"), and John Doe, as well as an order granting in part Ms. Sullinger's motion in limine. She, in turn, appeals the district court's partial denial of her motion to compel production of emails. The litigation stems from a dispute that persisted after Carol and Douglas Sullinger's divorce. Specifically, it arose from Ms. Sullinger's installation of clandestine cameras in the offices of a business that she and her ex-husband owned together. Although a Plaintiff below, Mr. Sullinger does not appeal the summary

judgment granted Ms. Sullinger on his claims. Nor does Ms. Sullinger appeal the summary judgment granted Mr. Sullinger on her counterclaims. But their antagonism toward one another continues through claims brought by VTG Inc. In addition, two of VTG Inc.'s employees have claims related to the secretive video recording. For the following reasons, we affirm the district court's summary judgment in favor of Defendants and its order denying on mootness grounds Ms. Sullinger's motion to compel. We also dismiss the appeal related to Ms. Sullinger's motion in limine as moot.

## I.

Carol and Douglas Sullinger co-owned a software-licensing company comprised of entities including VTG Inc. and Vendita Technology Group, LLC ("VTG LLC"). She owned a 51% share of VTG LLC and served as its Manager and CEO. He owned the remaining 49% of VTG LLC and was the sole owner and president of VTG Inc. This business couple were also married. Aware that her husband was about to file for divorce, Ms. Sullinger hired VACS to install an in-home security system and another security system, including surveillance cameras, in the Vendita offices.[1] VACS placed six pinhole cameras and small microphones in the ceiling ductwork or light fixtures in three offices; by the receptionist's desk near a common area with a copy machine; outside one office; and outside the conference room. The installation occurred after-hours during the nights of March 10 and 11, 2015. Recording took place over two days before employees discovered the cameras on or around March 13, 2015, the same day Mr. Sullinger filed for divorce. The video recordings provided no footage of him but did capture conversations of at least two employees, Chris Andrews and William Smith, recorded on March 12 and 13 in a common hallway and in another employee's office.

---

[1] VTG Inc. and VTG LLC operated out of the same office space. The tenant listed on the lease was "Vendita Technology Group," with no specification indicating VTG LLC or VTG Inc.

On March 10, 2017, while the divorce proceedings were still pending, Mr. Sullinger and VTG Inc. sued Ms. Sullinger, VACS, and John Doe in the Lucas County Court of Common Pleas. On the same day, three VTG employees—Clara Eckel, Chris Andrews, and William Smith—sued the same Defendants in another case pending in the same court. Later, Eckel voluntarily dismissed her claims, and Defendants removed both state cases to the U.S. District Court for the Northern District of Ohio.

Separately, in the divorce proceedings, the Lucas County Court of Common Pleas, Domestic Relations Division (the "divorce court") entered its divorce decree on March 23, 2018. The Sullingers had each alleged financial misconduct by the other during the divorce as grounds for the unequal division of marital property. Ohio law provides that a divorce court may "compensate [an] offended spouse with a distributive award or with a greater award of marital property" in the event of the other spouse's financial misconduct, which "includ[es], but [is] not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets." Ohio Rev. Code § 3105.171(E)(4). Among the allegations against Ms. Sullinger were that she had engaged in the following acts of financial misconduct:

> wiretapping and trespassing at the business in March of 2015; destruction of a business relationship between the Vendita Entities and Warnock, Tanner & Associates, Inc. (WTA) by relating the parties' pending divorce to Roger Warnock; entering into an agreement with WTA in June 2015 to solicit business or otherwise usurp opportunities . . . ; interfering with WBENC certification . . . ; filing motion to disqualify legal counsel for the Vendita Entities and filing a counterclaim and joining legal counsel as a counter-defendant in a pending federal lawsuit; . . . filing a complaint against a notary public employed by VTG, Inc. . . . .

The divorce court held that Mr. Sullinger did not establish that Ms. Sullinger had committed financial misconduct. It awarded all Vendita entities to him "free and clear of any interest of" Ms. Sullinger and directed him to "pay any claims or debts of the Vendita Entities and . . . hold [Carol Sullinger] harmless therefrom." The Ohio Court of Appeals affirmed the divorce court's finding

that Ms. Sullinger did not engage in financial misconduct. *Sullinger v. Sullinger*, No. L-18-1079, 2019 WL 1767020, at *14 –15 (Ohio Ct. App. April 19, 2019).

In federal district court, Defendants answered and Ms. Sullinger counterclaimed against Mr. Sullinger and counter-defendant Kimberly Savich, the corporate attorney for the Vendita entities. The allegations of the counterclaims stemmed largely from Mr. Sullinger and Ms. Savich's pursuit of criminal wiretapping charges against Ms. Sullinger: (1) abuse of process; (2) tortious interference with contract; (3) falsification; and (4) breach of fiduciary duty and taking of corporate opportunity (against only Mr. Sullinger). Ms. Sullinger later amended her answer and counterclaim to substitute a claim for intentional infliction of emotional distress in place of her falsification claim.

On November 15, 2017, Plaintiffs filed an amended complaint with the following allegations: (1) violation of the Federal Wiretap Act, 18 U.S.C. § 2510; (2) invasion of privacy and conspiracy to commit invasion of privacy; (3) violation of the Ohio Wiretap Act, Ohio Rev. Code 2933.52 & 2933.65; (4) trespass (brought by Mr. Sullinger and VTG Inc.); (5) intentional infliction of emotional distress (brought by Mr. Sullinger against Ms. Sullinger); (6) breach of fiduciary duty (brought by Mr. Sullinger against Ms. Sullinger); and (7) intentional interference with contractual relationship (brought by Mr. Sullinger and VTG Inc. against Ms. Sullinger).

After Plaintiffs objected to producing certain emails based on attorney work product and attorney-client privilege, Ms. Sullinger filed a motion to compel.

Before the district court ruled on that motion, the parties cross-moved for summary judgment. On June 18, 2019, the district court partially granted both motions for summary judgment. The district court ruled in favor of Mr. Sullinger and Ms. Savich on the counterclaims. It also ruled in Defendants' favor on the breach of fiduciary duty and tortious interference claims,

as well as on VTG Inc.'s invasion-of-privacy and federal- and state-wiretapping claims, because the causes of action were claim-precluded by the divorce decree. The court further ruled in Defendants' favor on the trespass claims because Ms. Sullinger had a right to possess the office space at issue as a 51% shareholder of one of the businesses located there and because the other Defendants were acting as her agents. Only the employees' and Mr. Sullinger's invasion-of-privacy and wiretapping claims remained.

In light of its order granting summary judgment, the district court denied Ms. Sullinger's motion to compel as moot because the sought-after emails were not relevant to the remaining wiretap and invasion-of-privacy claims. The district court based this ruling on what it construed as her acknowledgment that the emails were not relevant to any claims that remained pending.

After Ms. Sullinger received summary judgment on VTG Inc.'s claims, she moved the court in limine to bar Plaintiffs from (1) "introducing or referring to any video and audio files (or any other data) purportedly extracted from surveillance equipment installed at the Vendita business" because they had not disclosed any expert witness; and (2) "introducing any evidence or argument regarding Carol Sullinger's alleged lack of authority to access the Vendita offices" because the district court already determined that Ms. Sullinger had authority to access the offices. The district court denied the motion in limine with regard to expert testimony but granted it with regard to Ms. Sullinger's access authority.

Ms. Sullinger again moved for summary judgment on the invasion-of-privacy and wiretapping claims that remained. The district court granted that motion. It found no evidence that Mr. Sullinger was ever recorded because he was out of town when the cameras were operating. In addition, the district court found that the videotaped conversations of Andrews and Smith were not private because they were recorded in a common hallway and in another employee's office.

Andrews, Smith, and VTG Inc. appeal the district court's orders granting summary judgment and its order on the motion in limine. Ms. Sullinger appeals the district court's order regarding her motion to compel. None of the court's other orders were appealed.

## II.

We review a district court's grant of summary judgment de novo. *Kenney v. Aspen Techs., Inc.*, 965 F.3d 443, 447 (6th Cir. 2020). Summary judgment is proper where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *Id.* at 448. We ask whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* (quoting *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007)). We draw all reasonable inferences in favor of the nonmoving party. *Id.*

We review a district court's rulings on a motion in limine and on a motion to compel discovery for an abuse of discretion. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 560 (6th Cir. 2013). A district court abuses its discretion when it "relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Id.* (citation omitted).

## III.

A. THE JUNE 2019 SUMMARY JUDGMENT ORDER

### 1. *Res Judicata*

VTG Inc. contests the district court's holding that its causes of action against Ms. Sullinger were claim-precluded by the state court's divorce decree. For reasons discussed below, we affirm this ruling.

The Full Faith and Credit Statute directs us to adopt the "preclusion law of the State in which judgment was rendered." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985); *see* 28 U.S.C. § 1738. We therefore apply the law of Ohio, where the divorce decree was entered. Under Ohio law, "a valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.*, 653 N.E.2d 226, 229 (Ohio 1995).

For claim preclusion, Ohio law defines a "claim" not as a particular cause of action, but as legal liability that arises from the facts of a transaction without regard to a specific theory of relief. *See Grava*, 653 N.E.2d at 229 ("*The present trend is to see claim in factual terms and to make it coterminous with the transaction regardless of the number of substantive theories,* or variant forms of relief flowing from those theories, that may be available to the plaintiff."); *see also CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 490 (6th Cir. 2021) (defining "claim" under Ohio claim-preclusion law as "factual occurrence"). Thus, "[t]hat a number of different legal theories casting liability on an actor may apply to a given episode does not create multiple transactions and hence multiple claims . . . [even if] the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief." *Grava*, 653 N.E.2d at 229 (quoting Restatement (Second) of Judgments § 24(1) cmt. c (Am. L. Inst. 1982)). Ohio law implements this broad concept of claim preclusion through four elements:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action.

*Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997).

The first requirement is met here because the divorce decree constitutes a valid, final judgment rendered on the merits by a court of competent jurisdiction. *See* Ohio Rev. Code §§ 3105.011, 3105.171(B), (E); *Grava*, 653 N.E.2d at 229; *Barton v. Barton*, 86 N.E.3d 937, 953 (Ohio Ct. App. 2017). As to the second requirement, privity under Ohio law is a "somewhat amorphous" concept, but it encompasses "such an identification of interest of one person with another as to represent the same legal right." *Elec. Enlightenment, Inc. v. Kirsch*, No. 23916, 2008 WL 2814327, at \*2 (Ohio Ct. App. July 23, 2008) (citation omitted). A "mutuality of interest, including an identity of desired result" can create privity for the purpose of claim preclusion. *Brown v. Dayton*, 730 N.E.2d 958, 962 (Ohio 2000). Based on this standard, privity exists between VTG Inc. and Mr. Sullinger. Not only does VTG Inc. essentially concede privity in its briefing,[2] but Mr. Sullinger was also its sole owner both before and after the divorce proceeding.

The third requirement for claim preclusion is also satisfied because the claims, as defined under Ohio claim-preclusion law, were litigated in the divorce proceeding. *See Hapgood*, 127 F.3d at 493. VTG Inc. argues that its particular causes of action in the present case were not "actually litigated" in the divorce court for two reasons. First, although VTG Inc. was a third-party defendant in the divorce action, it could not bring claims in that proceeding, and thus it argues the causes of actions brought in the present case cannot be barred by the divorce decree. Second, VTG Inc. argues that the divorce court did not have jurisdiction to hear the tort claims at issue here. The first argument fails because, as discussed, VTG Inc. and Mr. Sullinger are in privity with each other; therefore, VTG Inc.'s interests were represented by Mr. Sullinger in the divorce proceeding.

---

[2] VTG Inc. later argues that it is "an entity and party able to assert its own causes of action against, none of which are in the nature of financial misconduct." That argument is made in the context of asserting that the entity's claims were never "actually litigated" by the divorce court, despite that this assertion contradicted its earlier concession that "the first requirement [of privity for the purpose of issue preclusion] is met" because "Vendita is named in this suit as well as the state court litigation, and is owned and operated by Douglas A. Sullinger."

The second argument fails because of Ohio's expansive definition of "claim" as a factual occurrence, instead of a cause of action, for purposes of claim preclusion.

True, the particular causes of action alleged here could not have been brought in the divorce court. But in *Grava*, the Supreme Court of Ohio explicitly noted that "claim" does not depend on the asserted substantive legal theory or the distinction between law and equity; instead, it must be viewed in factual terms. 653 N.E.2d at 229. The court adopted sections 24 and 25 of the Second Restatement of Judgments, which provide that "the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." *Id.* (quoting Restatement (Second) of Judgments § 24(1)). Here, the tortious interference, wiretapping, and invasion-of-privacy claims arose out of the same transaction as that of the financial-misconduct claim in the divorce action. Recovery for those alleged torts and statutory violations, therefore, is barred.

Comment g of § 24(1) of the Second Restatement makes clear that if a plaintiff brings an action in a court of limited jurisdiction, the plaintiff, "having voluntarily brought his action in a court which can grant him only limited relief, cannot insist upon maintaining another action on the claim." VTG Inc. could have brought its claims before a federal or state court of general jurisdiction before Mr. Sullinger filed for divorce. Instead, Mr. Sullinger sought recovery for Ms. Sullinger's clandestine video recordings through the financial-misconduct allegations of the divorce proceeding. Under Ohio law, neither he nor those in privity with him can complain now that the divorce court could not grant him the full scope of relief to which he might be entitled had he or VTG Inc. sued first in a court with jurisdiction to hear the tort claims.

Ohio caselaw following *Grava* supports that conclusion. Although some cases suggest that a judgment from a domestic relations court may not bar a later cause of action for an intentional

9

tort, those cases are limited to injuries stemming from physical or psychological injuries—not from property-based injuries. *See Shelar v. Shelar*, 910 F. Supp. 1307, 1313–15 (N.D. Ohio 1995) (distinguishing causes of action based on torts involving "physical and verbal abuse" from torts involving property and holding the latter was precluded by a divorce decree's ruling on financial misconduct). *Compare Davis v. Spriggs*, No. 09CAE090082, 2010 WL 4881491, at *1, 3–4 (Ohio Ct. App. 2010) (holding that the plaintiff's invasion-of-privacy and intentional-infliction-of-emotional-distress claims were not precluded by a contempt action based on a violation of a divorce decree), *with Smith v. Smith*, 2007-Ohio-512 (Ohio Ct. App. 2007) (holding that an ex-wife's claim to an interest in her ex-husband's retirement plan funds were barred by res judicata), *and Blymiller v. Blymiller*, 676 N.E.2d 1212, 1212–13 (Ohio Ct. App. 1996) (holding that a plaintiff's causes of action for fraud and wrongful conversion were barred by a former divorce proceeding in which he filed a counterclaim for financial misconduct that could have addressed those issues).[3] *See also Karras v. Karras*, 2016-Ohio-8511, at *4 (Ohio Ct. App. 2016) (applying res judicata to hold that a probate court's declaratory judgment barred a party's later forcible entry and detainer action even though "the nature of the proceedings was different [because] the probate proceedings were not conducted under the forcible entry and detainer statutes.").

The divorce court had jurisdiction to distribute the Sullingers' marital property, including VTG Inc. itself, and assess any alleged financial misconduct related to VTG Inc. Ohio Rev. Code §§ 3105.011, 3105.171(B), (E)(4). Here, VTG Inc. alleges harms to the same property that was the subject of the divorce decree. Although the divorce court could not enter a judgment for damages on the particular causes of action alleged here, it could—and was required to—consider

---

[3] The Ohio Court of Appeals in *Blymiller* ultimately rested its conclusion on issue preclusion, but its reasoning that the ex-husband could have brought his claim before the divorce court applies to the third requirement of claim preclusion. *Blymiller*, 676 N.E.2d at 1213–14 ("The issue of proceeds from the pension check and the wrongful conversion thereof is clearly a matter which could have and should have been addressed in the divorce proceeding.").

Mr. Sullinger's allegations in its equitable division of the property that is the subject of those claims. *See Gibson v. Gibson*, 622 N.E.2d 425, 431 (Ohio Ct. App. 1993). One of the purposes of a divorce decree is to deal with all disputes between the couple over their marital assets. It is for that reason that "[a]ll questions of property rights as between the parties to a divorce proceeding, capable of being litigated therein, must be determined in such proceeding," and a party to that divorce proceeding may not later assert such claims related to marital property in a separate action. 46 Ohio Jur. 3d *Family Law* § 677 (2020) (citing *Rexroat v. Rexroat*, 117 N.E.2d 178 (Ohio Ct. App. 1952)). Accordingly, the third requirement for claim preclusion under Ohio law is satisfied because Mr. Sullinger could have asserted, and indeed did assert, claims of financial misconduct against Ms. Sullinger in the divorce proceeding that arose from the facts underlying the marital property-based claims at issue here.[4]

The fourth requirement for claim preclusion is also met. VTG Inc.'s tortious interference, wiretapping, and invasion-of-privacy causes of action arise from the same transaction or occurrence comprising the subject matter of the divorce proceeding. The Vendita entities were the Sullingers' "major marital asset" at issue before the divorce court, which had the primary goal of dividing their marital property, and the facts underlying those claims served as the basis for the divorce court's ruling on the financial-misconduct issue. The facts Mr. Sullinger pleaded before the divorce court as part of his financial-misconduct claim are essentially the same as those alleged in VTG Inc.'s complaint before the district court. The divorce court specifically addressed the wiretapping allegations and Mr. Sullinger's allegations that Ms. Sullinger "usurp[ed] opportunities

---

[4] We are not persuaded that *Ohio Kentucky Oil Corp. v. Nolfi*, 5 N.E.3d 683, 689–90 (Ohio Ct. App. 2013) requires application of the Restatement's exceptions to claim preclusion. *Nolfi* addressed claim preclusion in the context of supplemental jurisdiction in federal court and did not pertain to the authority of a state divorce court. *See* 5 N.E.3d at 691. Other Ohio caselaw that does address divorce court proceedings leads us to believe that the Supreme Court of Ohio would hold that VTG Inc.'s claims are precluded.

of VTG, LLC for her personal benefit in seeking a prospective business opportunity with Albania" and "interfering with WBENC recertification of VTG, LLC by . . . refusing to sign the WBENC recertification" as part of Mr. Sullinger's financial-misconduct claims.

In sum, the four elements of claim preclusion under Ohio law are satisfied here. The divorce decree was the final word on the division of marital property, including the Sullingers' businesses. That decree cannot be reopened through the guise of business tort claims litigated after the fact. The marriage is over, and so are the disputes over marital property necessarily entailed by the torts and statutory violations alleged by VTG Inc. against Ms. Sullinger.

### 2. *Trespass*

The district court granted summary judgment to Defendants on the trespass claim because Ms. Sullinger had a right to possess the Vendita offices as 51% shareholder of VTG LLC at the time of the alleged trespass, and because VACS and John Doe—the surveillance company and technician who installed the equipment—acted as her agents. VTG Inc. argues that a genuine issue of material fact exists with regard to the trespass claim because evidence shows that the Sullingers were co-owners of the Vendita entities; that Mr. Sullinger managed the company's day-to-day operations; and that before March 2015, Ms. Sullinger did not have access to the keypad entry system at the Vendita offices. VTG Inc. offers no legal authority to indicate that these facts are material to the determination of whether a majority shareholder of a business has a right to possess her property, nor any indication that Ms. Sullinger disputes those facts. Nor does it point to any facts suggesting that VACS and John Doe were not acting as her agents. Thus, we affirm the district court's June 2019 order granting summary judgment to Defendants on the trespass claim. In light of this ruling, we dismiss as moot the appeal of the district court's order granting in part

the motion in limine. With no viable claim left to which it pertains, that motion no longer presents a live issue.

B. APRIL 2020 SUMMARY-JUDGMENT ORDER

With regard to the wiretapping and invasion-of-privacy claims, Andrews and Smith point to facts that they argue suggest a factual dispute over their reasonable expectation of privacy. Specifically, they note that the record includes "some disputed" facts suggesting an expectation of privacy, such as the fact that employees changed from work clothes into gym clothes in their offices (though there was no recording of any such clothes-changing); that Ms. Sullinger did not have access to the keypad entry system for offices; that she was not permitted in the office; and that she was informed that her access code to the security system had been cancelled. The court noted some of the facts regarding Ms. Sullinger's access to the office in its analysis. *Sullinger*, 2020 WL 3470343, at *3. Regardless, none of those facts establishes a genuine dispute of *material* fact. What matters is that the conversations were recorded in a common space or another employee's office and that Ms. Sullinger was still a majority owner of the business. *Id.* As explained below, these facts establish as a matter of law that there was no violation of the federal and state wiretapping statutes and no tortious invasion of privacy with respect to the particular recordings that were made.

*1. Federal and Ohio Wiretapping Claims*

The district court held that Andrews and Smith had no expectation of privacy in the shared spaces of the office or in another employee's office. We analyze the Ohio wiretapping claims alongside the federal wiretapping claims because "the Ohio statute must provide no less protection to individuals than does the federal statute." *State v. Thomas*, Nos. 88 CA 22, 88 CA 29, 1989 WL 74879, at *3 (Ohio Ct. App. June 28, 1989). The federal wiretapping statute protects "any

oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation," except for electronic communications. 18 U.S.C. § 2510(2). The Ohio statute provides a nearly identical definition of "oral communications," Ohio Rev. Code § 2933.51(B), and Ohio courts have held that "an oral communication only qualifies as a protected oral communication . . . if the person uttering it had a reasonable expectation of privacy," *State v. Ingram*, No. 10CA0022-M, 2010 WL 2990865, at *3 (Ohio Ct. App. Aug. 2, 2010). We have adopted a two-part reasonable-expectation test to determine if an oral communication is protected, considering whether (1) "a person exhibited an expectation of privacy," and (2) "whether that expectation was reasonable." *Huff v. Spaw*, 794 F.3d 543, 550 (6th Cir. 2015). The first prong is not met if a person either "*exposes* . . . statements to the 'plain view' of outsiders" or "fails to take . . . steps to prevent exposure to third parties." *Id.* (citations omitted). For the second prong, we ask whether "society is prepared to recognize an exhibited expectation as legitimate." *Id.* An "employee has a reasonable expectation of privacy in his office." *Bender's, Inc. v. Walker*, 1 F. App'x 317, 323 (6th Cir. 2001) (stating so in the Fourth Amendment context). And employees can have a reasonable expectation of privacy in the workplace where employees "take care to ensure that their conversations remained private" in a "small, relatively isolated" shared office. *Dorris v. Absher*, 179 F.3d 420, 425 (6th Cir. 1999).

The facts that Andrews and Smith assert are in dispute are not material under the standard for whether an employee has a reasonable expectation of privacy. They do not dispute the facts that they were recorded in a common hallway and in another employee's office and that in both places, they could easily be overheard and exhibited no intent to keep their conversations private. *See Dorris*, 179 F.3d at 425. It would be one thing if the conversations had taken place in an

14

arguably private spot, such as perhaps one of those employees' workstations, or if the cameras had recorded speech or conduct as to which the employees had a reasonable expectation of privacy. But these conversations were not in private. They were open, in a common space where others could hear them. Thus, the employees could not have had a reasonable subjective belief that Ms. Sullinger, a majority shareholder of VTG LLC, would not learn of their conversations. *See id.* Therefore, the district court properly granted summary judgment on these claims.[5]

### 2. *Invasion-of-Privacy Claims*

The district court held that the Andrews' and Smith's claims for invasion of privacy failed because (1) they "had no reasonable expectation that the owner of their company could not listen to their communications in open hallways or through [the other employee's] open door;" and (2) "there is no evidence that Carol disclosed the recordings to anyone." The Supreme Court of Ohio has held that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." *Sustin v. Fee*, 431 N.E.2d 992, 993–94 (Ohio 1982) (quoting Restatement (Second) Torts § 652B (Am. L. Inst. 1977)). A plaintiff must raise facts showing that a defendant "wrongful[ly] intru[ded] into" the plaintiff's "private activities." *Welling v. Weinfield*, 866 N.E.2d 1051, 1053 (Ohio 2007). Whether a plaintiff's activities were "private" depends on whether he has a reasonable expectation of privacy based on the totality of circumstances. *See Crawford v. Tivener*, No. 15CA22, 2016 WL 5638379, at \*6 (Ohio Ct. App. Sept. 22, 2016); *State v. Corbin*, 957 N.E.2d 849, 854–55 (Ohio Ct. App. 2011) (using a totality-of-the circumstances test in the search-and-seizure context); *see also Luis v. Zang*, No. 1:12-cv-629, 2018 WL 1724898, at \*10 (S.D. Ohio April 6, 2018).

---

[5] Because we affirm based on Andrews' and Smith's lack of a reasonable expectation of privacy, we need not address Ms. Sullinger's argument that their conversations were never "intercepted" under the meaning of the statutes.

Andrews and Smith argue that they had a reasonable expectation of privacy under the circumstances, raising the same facts that underlie the wiretapping claims. Although the test for determining whether a plaintiff had a reasonable expectation of privacy in the invasion-of-privacy context does not precisely mirror that for wiretapping claims, the same reasoning applies here. As discussed above, Andrews and Smith were recorded in a common space and in another employee's office where they could be easily overheard, outside their immediate workspaces, in the workplace of a business that Ms. Sullinger co-owned. Thus, the district court was correct to hold that they had no reasonable expectation of privacy.

Andrews and Smith also contend that a genuine issue of material fact exists regarding the wrongfulness of Ms. Sullinger's alleged intrusion into their conversation. They note that the secretive manner in which she installed wiretapping equipment and her alleged motive of gaining leverage in her divorce proceeding were wrongful. Nevertheless, the alleged wrongfulness of Ms. Sullinger's actions is inapposite if Andrews and Smith had no reasonable expectation of privacy that she could intrude on. *See Turner v. Shahed Enters.*, No. 10AP–892, 2011 WL 4090422, at *5 (Ohio Ct. App. Sept. 15, 2011) ("[T]here is no wrongful intrusion where there is no reasonable expectation of privacy.").

Accordingly, we affirm the district court's April 2020 grant of summary judgment to Ms. Sullinger regarding Andrews' and Smith's wiretapping and invasion-of-privacy claims.

C.  MOTION TO COMPEL

Ms. Sullinger's appeal argues that we should reverse the district court's denial of her motion to compel production of emails if we vacate any of the summary judgment rulings. She acknowledges, however, that if we affirm the orders granting her summary judgment on Plaintiffs' claims, then she will have no need for those emails in this litigation. Because we affirm the district

court's orders granting summary judgment on all claims, we dismiss Ms. Sullinger's appeal as moot.

IV.

For the foregoing reasons, we affirm the district court's judgment and dismiss Ms. Sullinger's appeal as moot.